IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHICAGO; and LUIS SALGADO, SR., as Administrator of the Estate of Luis Salgado, Jr., | ) No. |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Nautilus Insurance Company ("Nautilus"), by and through its attorneys Duane Morris, LLP, states for its Complaint:

### Nature of the Case

1. This is an action for declaratory judgment brought under 28 U.S.C. §§ 1332, 2201, and 2202, and concerns a tender for defense and indemnity made to Nautilus by the City of Chicago ("Chicago").

2. Nautilus issued an Environmental Combined Policy to GSG Consultants, Inc. ("GSG"), numbered ECPO1519898-15, with a policy period from August 13, 2015 to August 13, 2016 (the "Policy"). A copy of the Policy is attached hereto as Exhibit 1.

3. Chicago and GSG entered into a Professional Services Agreement on or about June 22, 2011 (the "Professional Services Agreement"). A copy of the Professional Services Agreement is attached hereto as Exhibit 2.

4. Chicago has been sued in the Circuit Court of Cook County concerning an alleged construction related accident in an action styled *Luis Salgado, Sr., as Administrator of the Estate*

*of Luis Salgado, Jr., deceased, v. City of Chicago, et al.*, 2020 L 4053 (the "Salgado Lawsuit"). A copy of the Complaint filed in the Salgado Lawsuit is attached hereto as Exhibit 3.

5. The Salgado Lawsuit asserts separate claims against Chicago and GSG concerning alleged professional services.

6. The claims asserted in the Salgado Lawsuit and tendered by Chicago to Nautilus pertain to purported professional services including engineering and/or construction management services.

7. The Policy does not provide a grant of coverage to Chicago for the claims asserted against Chicago in the Salgado Lawsuit.

8. Furthermore, the Policy contains exclusions applicable to various coverage parts, including a professional liability exclusion which excludes coverage for claims arising out of the rendering or failure to render professional services.

9. In this action, Nautilus seeks a declaratory judgment that it does not owe Chicago a duty to defend or indemnify in the Salgado Lawsuit.

## Parties

10. Plaintiff Nautilus Insurance Company is and was, at all times herein mentioned, a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Scottsdale, Arizona.

11. Defendant Chicago is an Illinois municipal corporation.

12. On information and informed belief, Defendant Luis Salgado Sr. ("Salgado") is a citizen of the State of Illinois.

**Jurisdiction and Venue**

13. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14. Venue is proper in this Court under 28 U.S.C. §§ 1391 because the defendants reside in, and/or are subject to, personal jurisdiction in this Court, the insurance contract at the heart of this controversy was delivered to GSG within the geographical boundaries of the Northern District of Illinois, and the Salgado Lawsuit is pending in the Circuit Court of Cook County.

**The Policy**

15. Nautilus, through its authorized administrator, Berkley Specialty Underwriting Managers, LLC, issued the Policy to GSG.

16. The Policy is an environmental combined policy with seven coverage parts, designated as coverage A through G, as added and amended by endorsement, and identified as:

    a.    Coverage A – Bodily Injury and Property Damage;

    b.    Coverage B – Personal and Advertising Injury Liability;

    c.    Coverage C – Medical Payments

    d.    Coverage D – Contractors Pollution Liability

    e.    Coverage E – Professional Liability

    f.    Coverage F – Microbial Substance Contractors Pollution Liability

    g.    Coverage G – Microbial Substance Professional Liability.

17. The Policy is amended by an Additional Insured – Blanket Endorsement which only provides additional insured status under Coverage A, B, and D.

18. The Policy is also amended by an Additional Insured – State or Governmental Agency or Subdivision or Political Subdivision – Permits or Authorizations Endorsement, which

identifies Chicago on the schedule of that endorsement, but which only provides additional insured status under Coverage A, B, and D.

*Coverage E*

19. Coverage E of the Policy is designated Professional Liability and grants claims made and reported coverage for certain claims for damages related to professional services.

20. Chicago is not an insured under Coverage E of the Policy as amended by endorsement.

21. Coverage E provides, in relevant part:

**(1)** **Insuring Agreement**

**(a)** We will pay those sums that the insured becomes legally obligated to pay as damages in excess of the deductible or self insured retention, if any, that result from **professional services** to which this insurance applies. The damages must result from an actual or alleged act, error or omission in the performance of **professional services** rendered by the insured. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages to which this insurance does not apply. We may, at our discretion, investigate any actual or alleged act, error or omission and settle any claim or **suit** that may result. But:

- The amount we will pay for damages is limited as described in Section **IV** - Limits Of Insurance; and

- Our right and duty to defend ends under Coverage **E** when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A**, **B**, **D**, or **E** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A**, **B**, **D**, or **E**.

**(b)** This insurance shall only apply if:

- The claim is first made against the insured and reported to the Insurer, in writing, during the policy period, or Extended Reporting Period, if applicable; and

- The actual or alleged act, error or omission takes place in the **coverage territory**; and

- The actual or alleged act, error or omission takes place on or after the Retroactive Date, if any, shown in the Declarations and before the end of the policy period.

4

22. Coverage E includes a "Contractual Liability" exclusion applicable to the professional services coverage grant which states that the Policy does not apply to damages by reason of the assumption of liability in a contract or agreement.

23. There is no grant of coverage for the Salgado Lawsuit to Chicago under Coverage E.

*Coverage A*

24. Coverage A of the Policy is designated Bodily Injury and Property Damage Liability and grants coverage for certain damages because of bodily injury or property damage.

25. Coverage A provides, in relevant part:

**(2)** **Insuring Agreement**

- (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** in excess of the deductible or self insured retention, if any, to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any claim or **suit** that may result. But:

  - The amount we will pay for damages is limited as described in Section **IV** - Limits Of Insurance; and

  - Our right and duty to defend ends under Coverage **A** when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A**, **B**, **D**, or **E** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A**, **B**, **D**, and **E**.

- (b) This insurance applies to **bodily injury** and **property damage** only if:

  - The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

  - The **bodily injury** or **property damage** occurs during the policy period; and

  - Prior to the policy period, no insured listed under Paragraph **1.** of Section **III** - Who Is An Insured and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a listed insured or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or

5

> **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

26. The Policy includes shared exclusions applicable to Coverage A including, but not limited to, a "Professional Liability" exclusion which provides, in relevant part:

**6. Professional Liability**

> **Bodily injury**, **property damage** or **personal and advertising injury** based upon or arising out of the rendering of or failure to render **professional services**.

27. Any potential grant of coverage for the Salgado Lawsuit to Chicago under Coverage A is excluded by the stated exclusions of the Policy including the Professional Liability exclusion.

### The Salgado Lawsuit

28. According to the allegations of the Salgado Lawsuit, Luis Salgado Jr. was injured while performing work at a jobsite located in Chicago, Illinois at or near the intersection of East 98th Street and South Escanaba Avenue on or about September 11, 2014.

29. Salgado asserts claims against Chicago based upon the alleged rendering and/or failure to render professional services.

30. Salgado and/or Luis Salgado, Jr. initiated legal action against Chicago in the Circuit Court of Cook County on or about August 15, 2015.

31. Salgado voluntarily dismissed without prejudice the previously filed action against Chicago on or about April 12, 2019 and refiled his claims in the Salgado Lawsuit on April 8, 2020.

### Another Insurer Has Been Defending Chicago

32. Chicago tendered its defense and indemnity in the Salgado Lawsuit to Nautilus on a concurrent basis on or about March 4, 2021 via a letter from Chicago's purported counsel, James J. Temple, Esq.

33. Sometime prior to March 4, 2021, Chicago tendered its defense to G&V Construction and its insurer, CNA.

34. CNA reportedly has been defending Chicago in the Salgado Lawsuit and continues to do so.

35. On April 30, 2021, Nautilus declined and denied Chicago's tender of the Salgado Lawsuit.

36. Nautilus asked Chicago to withdrawal its tender, but Chicago has refused to acquiesce to that request such that a live and actual controversy exists between Chicago and Nautilus as to coverage under the Policy for the claims asserted against Chicago in the Salgado Lawsuit.

**Count I – Declaratory Judgment**
(No Applicable Coverage Grant)

37. Nautilus reasserts the allegations of Paragraphs 1 - 36 as if fully set forth herein.

38. An insurer may seek declaratory judgment that a claim for which coverage has been sought is not covered under a policy of insurance.

39. The allegations of the Salgado Lawsuit pertain to professional services such that only Coverage E would apply to the extent any of the seven coverage parts may apply.

40. Nautilus has no duty to defend or indemnify Chicago in connection with the Salgado Lawsuit under the Policy on the basis that Chicago is not a covered insured under Coverage E.

41. Nautilus has no duty to defend or indemnity Chicago in connection with the Salgado Lawsuit under the Policy because Coverage A, B, and D do not apply by the terms and exclusions of those coverage parts.

42. There is no applicable, non-excluded grant of coverage under the Policy for Chicago as to the claims asserted in the Salgado Lawsuit.

43. An actual, present, and justiciable controversy has arisen between Nautilus and Chicago concerning whether there is an applicable grant of coverage to Chicago under the Policy.

44. Nautilus seeks declaratory judgment from this Court that Nautilus has no obligation to defend or indemnify Chicago in connection with the Salgado Lawsuit under the Policy.

WHEREFORE, Nautilus prays that this Court:

    a. Enter judgment on Count I in favor of Nautilus and against Chicago;

    b. Declare that Nautilus has no obligation to defend or indemnify Chicago in connection with the Salgado Action under the Policy;

    c. Award Nautilus its costs of suit; and

    d. For such other and further relief as the Court deems just and proper.

### Count II – Declaratory Judgment
(Late Notice)

45. Nautilus reasserts the allegations of Paragraphs 1 - 36 as if fully set forth herein.

46. An insurer may seek declaratory judgment that a claim for which coverage has been sought is not covered under a policy of insurance.

47. Coverage E provides claims made and reported coverage on certain claims for damages related to professional services.

48. The policy period of the Policy was from August 13, 2015 to August 13, 2016.

49. Chicago tendered the Salgado Lawsuit on or about March 4, 2021.

50. On information and informed belief, CNA has been defending Chicago since approximately June, 2016 and has controlled Chicago's defense along with Chicago for over four years.

51. Nautilus would be prejudiced if forced to take over the defense of Chicago after Chicago and another insurer have controlled and directed the defense for years.

52. The tender made by Chicago was unseasonable, late, and barred by the terms of the Policy under Coverage E.

53. Nautilus has no duty to defend or indemnify Chicago in connection with the Salgado Lawsuit because Chicago did not timely tender its purported claim.

54. An actual, present, and justiciable controversy has arisen between Nautilus and Chicago concerning whether there is an applicable grant of coverage to Chicago under the Policy.

55. Nautilus seeks declaratory judgment from this Court that Nautilus has no obligation to defend or indemnify Chicago in connection with the Salgado Lawsuit under the Policy.

WHEREFORE, Nautilus prays that this Court:

    a. Enter judgment on Count II in favor of Nautilus and against Chicago;

    b. Declare that Nautilus has no obligation to defend or indemnify Chicago in connection with the Salgado Action under the Policy;

    c. Award Nautilus its costs of suit; and

    d. For such other and further relief as the Court deems just and proper.

### Count III – Declaratory Judgment
(Professional Liability Exclusion)

56. Nautilus reasserts the allegations of Paragraphs 1 - 36 as if fully set forth herein.

57. An insurer may seek declaratory judgment that a claim for which coverage has been sought is not covered under a policy of insurance.

58. The Policy contains a shared exclusion entitled Professional Liability applicable to Coverages A and B (the "Professional Liability Exclusion").

59. The allegations against Chicago in the Salgado Lawsuit fall squarely into the Professional Liability Exclusion.

60. Nautilus has no duty to defend or indemnify Chicago in connection with the Salgado Lawsuit under the Policy because coverage is barred by the Professional Liability Exclusion.

61. An actual, present, and justiciable controversy has arisen between Nautilus and Chicago concerning whether there is an applicable grant of coverage to Chicago under the Policy.

62. Nautilus seeks declaratory judgment from this Court that Nautilus has no obligation to defend or indemnify Chicago in connection with the Salgado Lawsuit under the Policy.

WHEREFORE, Nautilus prays that this Court:

a. Enter judgment on Count III in favor of Nautilus and against Chicago;

b. Declare that Nautilus has no obligation to defend or indemnify Chicago in connection with the Salgado Action under the Policy;

c. Award Nautilus its costs of suit; and

d. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

NAUTILUS INSURANCE COMPANY

By: /s/ Mark A. Bradford
One of Its Attorneys

Mark A. Bradford (ARDC #6282564)
DUANE MORRIS, LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
312-499-6700